

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Michael E. Williams (Bar No. 181299)
2      Rachel Juarez (Bar No. 273133)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:  213.443.3000
4  Facsimile:  213.443.3100
   michaelwilliams@quinnemanuel.com
5  racheljuarez@quinnemanuel.com

6  YARMUTH WILSDON PLLC
    Scott T. Wilsdon (*pro hac vice* pending)
7      Jeremy E. Roller (*pro hac vice* pending)
   818 Stewart Street, Suite 1400
8  Seattle, Washington 98101
   Telephone:  206.516.3800
9  Facsimile:  206.516.3888
   wilsdon@yarmuth.com
10 jroller@yarmuth.com

```
                    FILED
           CLERK, U.S. DISTRICT COURT

               AUG - 8 2012

          CENTRAL DISTRICT OF CALIFORNIA
          BY _____ DEPUTY
```

11 Attorneys for Plaintiff DIRECTV, LLC

12
13         UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA

14 DIRECTV, LLC, a California limited
liability company,
15
        Plaintiff,
16
17       v.

18 JOHN DOES 1-10,

19         Defendants.

No. **CV12-06835**DMt((cwx)

**COMPLAINT FOR DAMAGES
AND EQUITABLE RELIEF**

20
21
22      Plaintiff DIRECTV, LLC, a California limited liability company

23 ("DIRECTV"), by and through its undersigned attorneys, alleges as follows:

## **INTRODUCTION**

1.   Plaintiff DIRECTV brings this action to halt Defendants' illegal scheme to divert and convert to their own benefit business opportunities that rightfully belong to DIRECTV, and to interfere with DIRECTV's contractual relationships with its Authorized Dealers and subscribers.

2.   By means currently unknown to DIRECTV, Defendants have obtained work orders and pending account information of prospective subscribers who have contacted DIRECTV to order satellite television service.  Defendants convert that information to their own benefit and sell the information as "sale leads" to Authorized Dealers of DIRECTV that were neither contacted by the prospective subscribers nor played any role in originating their subscription accounts.

3.   The pending account information is resubmitted as "new" accounts originated by Authorized Dealers, for which the Authorized Dealers seek to be paid commissions and other compensation by DIRECTV.  Defendants attempt to conceal their theft, and further their scheme to defraud, by contacting DIRECTV and, falsely purporting to be prospective subscribers, requesting that their pending accounts be cancelled so that the Authorized Dealers can resubmit the account information to DIRECTV.

4.   DIRECTV has suffered damages as a direct and foreseeable consequence of Defendants' unlawful schemes.  Those damages include DIRECTV's payment of commissions and other compensation to Authorized Dealers for supposed "new" accounts submitted by them, for which no commissions or other compensation were rightfully owed.  Damages to DIRECTV also include harm due to Defendants' acts in

1   improperly diverting work orders and pending account information, converting that

2   information to Defendants' benefit, and interfering with DIRECTV's contractual

3   relationships with its Authorized Dealers and subscribers.

4       5.    Defendants' actions violate the Computer Fraud and Abuse Act, 18

5   U.S.C. § 1030, the Lanham (Trademark) Act, 15 U.S.C. §§ 1114 and 1125 (trademark

6   infringement and false association), California Business and Professions Code §

7   17200, *et seq.*, the Uniform Trade Secrets Act, California Civil Code § 3426, *et seq.*,

8   and state common law.

9       6.    DIRECTV brings this action to restrain these unlawful acts and practices,

10   and to recover damages and other relief described in this Complaint.

11   **PARTIES**

12       7.    Plaintiff DIRECTV is a limited liability company under the laws of the

13   State of California.

14       8.    Defendants John Does 1 to 10 are individuals and entities whose true

15   identities are currently unknown to DIRECTV and, for that reason, are identified by

16   such fictitious names. DIRECTV will amend this Complaint to allege Defendants'

17   true names and capacities when ascertained. DIRECTV is informed and believes, and

18   therefore alleges, that each of the fictitiously named Defendants is responsible in some

19   manner for the wrongful conduct alleged, and that DIRECTV's injuries were

20   proximately caused by such Defendants.

21   **JURISDICTION AND VENUE**

22       9.    This action arises under the Computer Fraud and Abuse Act, 18 U.S.C.

23   § 1030, the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and state law.

10.    The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 18 U.S.C. § 1030(g), 15 U.S.C. § 1121(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein.

11.    This Court has personal jurisdiction over Defendants because they have conducted business activities in and directed to the State of California, have purposely availed themselves of the privilege to conduct business activities in this State, and because they are primary participants in tortious acts and schemes in and directed to this State.  Defendants' contacts with the State of California include but are not limited to using facilities and computer systems in this State in furtherance of their fraudulent schemes against DIRECTV.  Defendants have undertaken the foregoing acts with knowledge that such acts would cause harm to DIRECTV and its subscribers and other members of the public in the State of California.  DIRECTV further alleges, in the alternative, that this Court has personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2).

12.    Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to DIRECTV's claims occurred in the District.  Venue is also proper in the Central District of California, pursuant to 28 U.S.C § 1391(c)(3), as to any Defendants who are not residents of the United States.

## FACTUAL BACKGROUND

### A.    DIRECTV Satellite Television System

13.    DIRECTV is the nation's leading direct broadcast satellite system, delivering hundreds of channels of digital entertainment and informational

COMPLAINT

1   programming to more than 19 million residences and businesses equipped with

2   specialized DIRECTV satellite receiving equipment.  The DIRECTV receiving

3   equipment consists of a small satellite dish, an Integrated Receiver/Decoder

4   (sometimes referred to as a "Receiver"), and an Access Card that is necessary to

5   operate the Receiver.

6       14.   DIRECTV's satellite television programming currently includes major

7   cable networks, major studio movies, local broadcast stations in most markets, special

8   event programming offered on a pay-per-view basis, and a variety of other sports and

9   special interest programs and packages.  DIRECTV contracts and pays for the right to

10   distribute this programming and entertainment content to its subscribers, and holds

11   license rights under the Copyright Act to exhibit the programming to its subscribers.

12       15.   Most programming distributed by DIRECTV is delivered to DIRECTV's

13   broadcast centers in Los Angeles, California, and Castle Rock, Colorado.  At the

14   broadcast centers and local collection facilities, DIRECTV digitizes and compresses

15   the programming into a signal that is then encrypted (electronically scrambled) by

16   DIRECTV to prevent unauthorized viewing of the programming.  DIRECTV

17   transmits the encrypted signal to satellites located in stationary orbits approximately

18   22,300 miles above the earth.

19       16.   The satellites relay the encrypted signal back to Earth, where it can be

20   received by subscribers equipped with DIRECTV receiving equipment.  The satellite

21   dishes can be mounted on a rooftop, windowsill, or deck railing at the subscriber's

22   residence or business.  The signal is received by the dish and transmitted by cable wire

23   to the subscriber's Receiver.  The Receiver processes and decrypts the incoming

1   signal consistent with the programming services authorized on the subscriber's

2   account.

3       17.   DIRECTV distributes satellite receiving equipment to its subscribers for

4   the purpose of enabling authorized access to DIRECTV programming.  In the past,

5   equipment was distributed by sale to DIRECTV subscribers; most equipment today is

6   distributed by lease to subscribers.

7       18.   Residential and commercial subscribers can choose from several base

8   programming packages, for which they are charged a periodic subscription fee,

9   typically monthly.

10       19.   Persons wishing to subscribe to DIRECTV can obtain subscription

11   accounts by contacting an Authorized Dealer or by contacting DIRECTV directly.

12   Prospective subscribers are asked to provide name, address, programming choice and

13   other information in connection with obtaining subscription accounts for DIRECTV

14   services.  For residential accounts, the subscriber information is entered into

15   DIRECTV's protected computer systems in one of two ways:

16       (a)   For new accounts submitted through an Authorized Dealer, the

17   subscriber information is typically entered through a special web-based feature

18   that DIRECTV makes available to Authorized Dealers and that requires

19   Authorized Dealers to present valid credentials, including a login and a

20   password.

21       (b)   For new accounts submitted as "direct sales," which occurs when

22   new subscribers contact DIRECTV directly, the subscriber information is

23   entered by (i) a DIRECTV customer service representative speaking by

1  telephone with the new subscriber, or (ii) the new subscriber by following

2  various prompts on the company's website, www.directv.com.

3      20.    The subscriber information is entered and maintained in computer

4  systems operated by DIRECTV at locations in California and other states.  These

5  computer systems are protected from unauthorized access, and access is strictly

6  limited by DIRECTV to authorized persons in the performance of their work

7  responsibilities.  By way of example, an Authorized Dealer is allowed only limited

8  access to accounts submitted by that Dealer, and is prevented from accessing "direct

9  sales" accounts or accounts submitted by other Authorized Dealers.

10      21.    Once entered into DIRECTV's protected computer systems, a pending

11  account is created with the subscriber information for activation of service and a work

12  order is generated to facilitate the installation of satellite receiving equipment at the

13  subscriber's home or business.

14      22.    Depending on scheduling and other issues, a work order generated for a

15  new account may be pending for 48 hours or longer.  For new accounts submitted as

16  "direct sales," upon approval of the account, the work order is transmitted to an

17  authorized installation services company or fulfilled by DIRECTV to complete the

18  installation.

19      23.    DIRECTV pays commissions and other compensation based on the

20  manner by which a subscription account is activated.  For example, DIRECTV pays

21  commissions, continuing service fees and other compensation to Authorized Dealers

22  for each account originated and activated by them.  Additionally, DIRECTV pays an

23  installation fee to the Authorized Dealer who has contracted to install satellite

00235.23632/4898362.1

COMPLAINT

1    receiving equipment at the new subscriber's home or business. By comparison, for a

2    direct sales account created when a new subscriber contacts DIRECTV directly, if the

3    installation is not performed by DIRECTV, DIRECTV pays only an installation fee to

4    the authorized installation services company that installs the equipment.

5        24.    DIRECTV uses a number of trademarks and service marks in connection

6    to its sale of television programming service. DIRECTV has duly and properly

7    registered its trademarks and service marks in the United States Patent and Trademark

8    Office on the Principal Register, including the "DIRECTV®" service mark (including

9    but not limited to Reg. No. 2,698,197, registered March 18, 2003; and Reg. No.

10    3,085,552, registered April 25, 2006) and the DIRECTV cyclone design (including

11    but not limited to Reg. No. 1,989,358, registered July 23, 1996; and Reg. No.

12    2,372,271, registered August 1, 2000) (collectively, the "DIRECTV Marks"). True

13    and correct copies of these registrations are attached hereto as Exhibits A to D.

14    DIRECTV is the true and rightful owner of the DIRECTV Marks.[1]

15    **B.    Defendants' Wrongful Conduct**

16        25.    Beginning at a time unknown and continuing to the present, Defendants

17    have engaged in repeated unlawful acts and practices directed at DIRECTV.

18        26.    By means currently unknown to DIRECTV, Defendants have diverted

19    work orders of prospective subscribers who have contacted DIRECTV to order

20    satellite television service. Defendants have converted that information to their own

21    benefit by selling the work orders as "sale leads" to Authorized Dealers of DIRECTV

22    _____

23    [1] The DIRECTV cyclone design (Reg. No. 1,989,358) was assigned to DIRECTV by Hughes Communications, Inc. on November 4, 1999. A true and correct copy of that assignment is attached hereto as Exhibit E.

COMPLAINT

1  that were neither contacted by the prospective subscribers nor played any role in

2  originating their subscription accounts.  Defendants have attempted to conceal their

3  theft, and further their scheme to defraud, by contacting DIRECTV and, falsely

4  purporting to be prospective subscribers, requesting that their pending accounts be

5  cancelled so that the Authorized Dealers can resubmit the account information to

6  DIRECTV.

7        27.    On information and belief, in some instances Defendants have contacted

8  prospective subscribers seeking pending account information.  In those

9  communications with prospective subscribers, Defendants have falsely represented

10  that they work for and/or are contacting the prospective subscribers on behalf of

11  DIRECTV.  In so doing, Defendants have claimed a false affiliation with DIRECTV,

12  and have made unauthorized use of the protected DIRECTV Marks.

13        28.    Unaware of Defendants' deception, and in reliance upon the "new"

14  account information submitted by Authorized Dealers, DIRECTV has paid and

15  continues to pay commissions and other compensation to Authorized Dealers who did

16  not originate the accounts and who are not entitled to compensation therefor.

17        29.    DIRECTV has suffered damages as a direct and foreseeable consequence

18  of Defendants' unlawful schemes.  Those damages include DIRECTV's payment of

19  commissions and other compensation to Authorized Dealers for supposed "new"

20  accounts submitted by them, for which no commissions or other compensation were

21  rightfully owed.  Damages to DIRECTV also include harm due to Defendants' acts in

22  improperly diverting work orders and pending account information, converting that

23

information to Defendants' benefit, and interfering with DIRECTV's contractual relationships with its Authorized Dealers and subscribers.

30.    Additionally, in furtherance of their scheme to defraud, Defendants have used and are continuing to use the DIRECTV Marks and DIRECTV's name, without authorization or consent by DIRECTV, in connection with their scheme to sell "sale leads" for pending DIRECTV accounts.  By these actions, Defendants have interfered with DIRECTV's ability to manage sales of its products and services to the public, resulting in irreparable harm to DIRECTV's business reputation and goodwill.

31.    Defendants' wrongful acts are willful and deliberate, and have caused and continue to cause significant and irreparable harm to DIRECTV.  DIRECTV brings this action to recover damages for the harm it has sustained and to obtain injunctive relief prohibiting Defendants' further violations.

### FIRST CLAIM

**(Accessing Protected Computers in Violation of 18 U.S.C. § 1030)**

32.    Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

33.    DIRECTV uses a system of computers to record, manage, and protect subscriber account information, and that system of computers is used by DIRECTV in a manner that affects interstate or foreign commerce or communication of the United States.  As such, the computers used by DIRECTV constitute "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

34.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), upon information and belief, by intentionally accessing one or more

of the computers used by DIRECTV to record, manage and protect subscriber account information, without authorization or exceeding authorized access, and thereby obtaining information from those computers, including but not limited to protected subscriber account information.

35.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4), upon information and belief, by knowingly and with intent to defraud accessing one or more of the computers used by DIRECTV to record, manage and protect subscriber account information, without authorization or exceeding authorized access, and by means of such conduct have furthered Defendants' intended fraud against DIRECTV.  Upon information and belief, the object of Defendants' fraud consists of more than the mere use of the computer, and has caused loss to DIRECTV of more than $5,000 over any one-year period.

36.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B), upon information and belief, by intentionally accessing one or more of the computers used by DIRECTV to record, manage and protect subscriber account information, without authorization, and as a result of such conduct, recklessly have caused damage to DIRECTV.

37.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C), upon information and belief, by intentionally accessing one or more of the computers used by DIRECTV to record, manage and protect subscriber account information, without authorization, and as a result of such conduct, have caused damage and loss to DIRECTV.

COMPLAINT

38.    Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C.
§ 1030(b), upon information and belief, by conspiring to commit the violations of 18
U.S.C. § 1030(a) listed above.

39.    DIRECTV is a "person" within the meaning of 18 U.S.C. § 1030(e)(12),
and is entitled to remedies at law and equity pursuant to 18 U.S.C. § 1030(g) because
Defendants' conduct has caused a loss to DIRECTV of more than $5,000 over any
one-year period and because Defendants' conduct has caused damage affecting 10 or
more computers used by DIRECTV to record, manage and protect subscriber account
information during any one-year period.

40.    As a direct and proximate result of Defendants' wrongful conduct,
DIRECTV has suffered and continues to suffer damages, including payment of
commissions and other compensation to Authorized Dealers for accounts purportedly
originated by them when, in truth and fact, the prospective subscribers had contacted
DIRECTV directly to order satellite television service, and their work orders and
pending accounts were converted by Defendants  and then sold to Authorized Dealers.
DIRECTV has suffered additional damages resulting from Defendants' acts in
improperly diverting work orders and pending account information, converting that
information to Defendants' benefit, and interfering with DIRECTV's contractual
relationships with its Authorized Dealers and subscribers.

41.    Defendants knew or should have known that their conduct alleged herein
was and is illegal and prohibited.  Such violations have caused and will continue to
cause DIRECTV irreparable harm, and DIRECTV does not have an adequate remedy

1  at law to redress such continued violations.  Unless restrained by this Court,

2  Defendants will continue to violate 18 U.S.C. §§ 1030(a) and (b).

## SECOND CLAIM

### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

5  42.    Plaintiff DIRECTV repeats and realleges the allegations in all preceding

6  paragraphs as if set forth fully herein.

7  43.    DIRECTV is the true and rightful owner of a number of trademarks and

8  service marks registered on the Principal Register of the United States Patent and

9  Trademark Office, including but not limited to Reg. Nos. 2,698,197 and 3,085,552,

10  ("DIRECTV" service mark, registered March 18, 2003 and April 25, 2006,

11  respectively); Reg. No. 1,989,358 (DIRECTV cyclone design, registered July 23,

12  1996); and Reg. No. 2,372,271 (DIRECTV cyclone design, registered August 1,

13  2000). *See* Exhibits A to D.

14  44.    The DIRECTV Marks are arbitrary and fanciful and thus inherently

15  distinctive.  Additionally, because of DIRECTV's fair and honorable dealings with its

16  customers, and investment of time, effort and other resources to promote and protect

17  the DIRECTV Marks, the DIRECTV Marks enjoy valuable goodwill in the United

18  States and other parts of the world.  The relevant consuming public has come to

19  recognize products and services bearing the DIRECTV Marks as high quality products

20  and services connected with or offered by DIRECTV.

21  45.    Notwithstanding DIRECTV's statutory rights in the DIRECTV Marks,

22  Defendants have used and commercially exploited, and continue to use and exploit,

23

1  the DIRECTV Marks in connection with their scheme to sell "sale leads" for pending

2  DIRECTV accounts.

3      46.    Defendants' use of the DIRECTV Marks has been without DIRECTV's

4  authorization or consent.  Defendants' conduct constitutes willful and deliberate

5  infringement of DIRECTV Marks, in violation of Section 32 of the Lanham

6  (Trademark) Act, 15 U.S.C. § 1114.

7      47.    Defendants' unauthorized use of the DIRECTV Marks has caused and

8  will continue to cause the public to be confused, mistaken or deceived as to the

9  source, origin or authenticity of the DIRECTV satellite television programming

10  services obtained in connection with Defendants' scheme.

11      48.    Further, Defendants' unauthorized use of the DIRECTV Marks has

12  caused and will continue to cause the public to conclude, incorrectly, that Defendants

13  have the right and authority to contact and obtain confidential information from

14  DIRECTV subscribers on behalf of DIRECTV, have the right and authority to solicit,

15  accept and process orders for DIRECTV products and services, and have the right and

16  authority to act as authorized agents of DIRECTV or are otherwise affiliated with

17  DIRECTV.

18      49.    As a direct and proximate result of Defendants' wrongful conduct,

19  DIRECTV has suffered and continues to suffer damage, including damage to its

20  business reputation and goodwill.

21      50.    DIRECTV has no adequate remedy at law for Defendants' wrongful

22  conduct because, among other things, (a) the DIRECTV Marks are unique and

23  valuable properties which have no readily determinable market value, (b) Defendants'

00235.23632/4898362.1                                                    COMPLAINT

infringement constitutes harm to DIRECTV's business reputation and goodwill such that DIRECTV could not be made whole by any monetary award, (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the products and services offered by Defendants, and (d) Defendants' wrongful conduct, and the resulting damages to DIRECTV, is continuing.

### THIRD CLAIM

### (False Association in Violation of 15 U.S.C. § 1125(a))

51.    Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

52.    Defendants' use of the DIRECTV Marks and DIRECTV's name is a false designation of origin or a false description or representation that wrongfully and falsely designates the products and services promoted by Defendants as originating directly from DIRECTV and with DIRECTV's authorization or consent, and constitutes the utilization of false descriptions or representations in interstate or foreign commerce.

53.    Defendants' use of the DIRECTV Marks and DIRECTV's name has been without DIRECTV's authorization or consent and is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with DIRECTV, or as to the origin, sponsorship or approval by DIRECTV, in violation of Section 43(a) of the Lanham (Trademark) Act, 15 U.S.C. § 1125(a).

00235.23632/4898362.1

COMPLAINT

54.     As a direct and proximate result of Defendants' wrongful conduct, DIRECTV has suffered and continues to suffer damage, including damage to its business reputation and goodwill.

55.     DIRECTV has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) the DIRECTV Marks are unique and valuable properties which have no readily determinable market value, (b) Defendants' infringement constitutes harm to DIRECTV's business reputation and goodwill such that DIRECTV could not be made whole by any monetary award, (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the products and services offered by Defendants, and (d) Defendants' wrongful conduct, and the resulting damages to DIRECTV, is continuing.

## FOURTH CLAIM

### (Unfair Competition in Violation of California Business & Professions Code § 17200 and Common Law)

56.     Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

57.     By diverting work orders and pending account information of prospective DIRECTV subscribers, converting that information to Defendants' benefit by selling the information as "sale leads" to commissioned Authorized Dealers, and attempting to hide their scheme by cancelling the subscribers' original direct orders to DIRECTV, Defendants have been and are engaged in an "unlawful, unfair or

1  fraudulent business act or practice" in violation of California Business and Professions

2  Code § 17200 and state common law.

3       58.    DIRECTV is a person within the meaning of California Business and

4  Professions Code § 17201 and has suffered injury in fact and has lost money or

5  property as a result of Defendants' unfair competition within the meaning of

6  California Business and Professions Code § 17204.

7       59.    As a direct and proximate result of Defendants' wrongful conduct,

8  DIRECTV has suffered and continues to suffer damages, including payment of

9  commissions and other compensation to Authorized Dealers for accounts purportedly

10  originated by them when, in truth and fact, the prospective subscribers had contacted

11  DIRECTV directly to order satellite television service, and their work orders and

12  pending account information were converted by Defendants and then sold to

13  Authorized Dealers. DIRECTV has suffered additional damages resulting from

14  Defendants' acts in improperly diverting work orders and pending account

15  information, converting that information to Defendants' benefit, and interfering with

16  DIRECTV's contractual relationships with its Authorized Dealers and subscribers.

17       60.    DIRECTV is entitled to recover restitution from Defendants, in an

18  amount to be proven at trial, in addition to a civil penalty imposed pursuant to

19  California Business and Professions Code § 17206(b).

20       61.    Defendants knew or should have known that their conduct alleged herein

21  constituted unfair competition in violation of California Business and Professions

22  Code § 17200 and state common law. Such violations have caused and will continue

23  to cause DIRECTV irreparable harm, and DIRECTV does not have an adequate

00235.23632/4898362.1

COMPLAINT

1  remedy at law to redress such continued violations. Unless restrained by this Court,

2  Defendants will continue to engage in unfair competition in violation of California

3  Business and Professions Code § 17200 and state common law.

### FIFTH CLAIM

### (Violation of Uniform Trade Secrets Act,

### California Civil Code §§ 3426-3426.11)

7  62.    Plaintiff DIRECTV repeats and realleges the allegations in all preceding

8  paragraphs as if set forth fully herein.

9  63.    Defendants have unlawfully misappropriated DIRECTV's trade secrets

10  by obtaining, using, and disclosing the pending account information and work orders

11  for prospective DIRECTV subscribers prior to activation of the subscribers' accounts.

12  64.    The pending account information and work orders for prospective

13  DIRECTV subscribers, prior to activation of their accounts, derive actual and

14  potential independent economic value from not being generally known to the public or

15  to other persons who can obtain economic value from their disclosure or use.

16  65.    DIRECTV takes reasonable efforts to maintain the secrecy of these trade

17  secrets.

18  66.    As a proximate cause of Defendants' unlawful misappropriation of

19  DIRECTV's trade secrets, DIRECTV has suffered and continues to suffer actual

20  losses, including but not limited to payment of commissions and other compensation

21  to Authorized Dealers for accounts purportedly originated by them when, in truth and

22  fact, the prospective subscribers had contacted DIRECTV directly to order satellite

23  television service, and their work orders and pending account information were

converted by Defendants and then sold to Authorized Dealers. DIRECTV has suffered additional losses resulting from Defendants' acts in improperly diverting work orders and pending account information, converting that information to Defendants' benefit, and interfering with DIRECTV's contractual relationships with its Authorized Dealers and subscribers.

67. As a direct and proximate cause of Defendants' unlawful misappropriation, Defendants have been unjustly enriched.

68. DIRECTV is entitled to recover its actual losses and Defendants' unjust enrichment, pursuant to California Civil Code § 3426.3.

## SIXTH CLAIM

### (Tortious Interference with Prospective Economic Advantage)

69. Plaintiff DIRECTV repeats and realleges the allegations in all preceding paragraphs as if set forth fully herein.

70. Defendants have intentionally interfered with DIRECTV's economic expectancy with subscribers who originally directly ordered DIRECTV satellite television programming from DIRECTV, but whose pending account information and work orders were converted by Defendants and sold to Authorized Dealers.

71. DIRECTV had relationships with prospective subscribers who contacted it directly to order DIRECTV satellite television service. DIRECTV had a probability of future economic benefit from its relationships with those prospective subscribers.

72. Defendants knew of DIRECTV's relationships with prospective subscribers who had contacted DIRECTV directly to order DIRECTV satellite television service.

73.     By improperly diverting work orders and pending account information, selling that information as leads to Authorized Dealers, and cancelling the pending accounts, Defendants have taken intentional action designed to disrupt DIRECTV's relationships with its prospective subscribers.

74.     By improperly diverting work orders and pending account information, selling that information as leads to Authorized Dealers, and cancelling the pending accounts, Defendants have actually disrupted DIRECTV's relationships with its prospective subscribers.  Defendants have taken these actions without justification or legal excuse.

75.     DIRECTV has been economically harmed by Defendants' improper acts.

76.     By reason of the foregoing, Defendants are liable for all losses suffered by DIRECTV as a result of Defendants' interference.

## **PRAYER FOR RELIEF**

Wherefore, plaintiff DIRECTV respectfully requests that this Court grant the following relief:

a.      Find that Defendants' conduct violates 18 U.S.C. §§ 1030(a) and (b), 15 U.S.C. § 1114 and § 1125(a), California Business and Professions Code § 17200, the Uniform Trade Secrets Act, California Civil Code §§ 3426-3426.11, and state common law;

b.      Find further that Defendants' conduct was the intended and foreseeable result or consequence of Defendants' scheme;

c.      Find further that Defendants' violations of 18 U.S.C. §§ 1030(a) and (b), 15 U.S.C. § 1114 and § 1125(a), California Business and Professions Code § 17200,

00235.23632/4898362.1

COMPLAINT

1   the Uniform Trade Secrets Act, and state common law were willful and malicious, for

2   tortious or illegal purpose and/or for purposes of direct or indirect commercial

3   advantage or private commercial or financial gain;

4         d.     In accordance with 18 U.S.C. § 1030(g), California Business and

5   Professions Code § 17203, California Civil Code § 3426.2, and state common law,

6   enjoin and restrain Defendants, and persons or entities controlled directly or indirectly

7   by Defendants, from (i) accessing DIRECTV's computer systems without

8   authorization or exceeding authorized access, (ii) obtaining subscriber and pending

9   account information from DIRECTV, (iii) disclosing that information to Authorized

10  Dealers, and (iv) cancelling the pending accounts and associated work orders;

11        e.     In accordance with 15 U.S.C. § 1116(a), enjoin and restrain Defendants,

12  and persons or entities controlled directly or indirectly by Defendants, from the

13  following conduct:

14             (1)    imitating, copying, or making any other infringing use or

15  infringing distribution of products or services now or hereafter protected by

16  DIRECTV's registered trademarks and service marks, including, but not limited

17  to, the following Trademark Registration Nos.:

18                (a)    2,698,197 ("DIRECTV" service mark);

19                (b)    3,085,552, ("DIRECTV" service mark);

20                (c)    1,989,358 (DIRECTV cyclone design);

21                (d)    2,372,271 (DIRECTV cyclone design); and

22                (e)    Any other items or works now or hereafter protected by any

23  DIRECTV trademark or service mark;

1     (2)    manufacturing, assembling, producing, distributing, offering for

2 distribution, circulating, selling, offering for sale, advertising, importing,

3 exporting, promoting, or displaying any product or service bearing any

4 simulation, reproduction, counterfeit, copy, or colorable imitation of any of

5 DIRECTV's registered trademarks or service marks, including, but not limited

6 to, those listed in subparagraph (e)(1);

7     (3)    using any false designation of origin or false or misleading

8 description or false or misleading representation that can or is likely to lead the

9 trade or public erroneously to believe that any product or service has been

10 manufactured, assembled, produced, distributed, offered for distribution,

11 circulation, sold, offered for sale, imported, exported, advertised, promoted,

12 displayed, licensed, sponsored, approved, or authorized by or for DIRECTV,

13 when such is not true in fact;

14     (4)    using reproductions, counterfeits, copies or colorable imitations of

15 DIRECTV's trademarks or service marks in the distribution, offering for

16 distribution, circulating, sale, offering for sale, advertising, importing,

17 exporting, promoting, or displaying of any products or services not authorized

18 or licensed by DIRECTV;

19     (5)    using the names, logos, or other variations thereof of any of

20 DIRECTV's trademarks or service marks in any of the Defendants' trade or

21 corporate names;

22     (6)    representing or claiming that Defendants are employed by,

23 associated or affiliated with, or endorsed by DIRECTV; and

1               (7)     engaging in any other activity constituting an infringement of any

2    of DIRECTV's trademarks or service marks, or of DIRECTV's rights in, or

3    right to use or to exploit, those trademarks or service marks;

4             f.     In accordance with 18 U.S.C. § 1030(g), California Civil Code § 3426.3,

5    and state common law, award DIRECTV compensatory damages in an amount to be

6    proven at trial;

7             g.     In accordance with California Business and Professions Code § 17206(b),

8    impose a civil penalty in an amount the Court considers just based on the nature and

9    seriousness of the misconduct, the number of violations, the persistence of the

10   misconduct, the length of the time over which the misconduct occurred, the

11   willfulness of Defendants' misconduct, and Defendants' assets, liabilities, and net

12   worth;

13            h.     In accordance with 15 U.S.C. § 1117, award DIRECTV the greater of (1)

14   treble damages suffered by DIRECTV and any profits made by Defendants as a result

15   of the violations alleged herein, or (2) statutory damages to the fullest extent permitted

16   by law;

17            i.     In accordance with 18 U.S.C. § 1030(g), 15 U.S.C. § 1117(a), California

18   Business and Professions Code § 17203, and state common law, declare that

19   Defendants hold in trust, as constructive trustees for the benefit of DIRECTV, all

20   "profits" received by Defendants through their unlawful acts and practices;

21            j.     In accordance with 18 U.S.C. § 1030(g), California Business and

22   Professions Code § 3426.3, and state common law, award restitution to DIRECTV in

23   the amount that Defendants were unjustly enriched through their unlawful conduct;

COMPLAINT

k.    In accordance with 18 U.S.C. § 1030(g), 15 U.S.C. § 1117, California Business and Professions Code § 17206, California Civil Code § 3426.4, and state common law, order Defendants to pay to DIRECTV all of its costs, reasonable attorneys' fees, and investigative costs;

l.    Award DIRECTV pre-Complaint interest, and pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

m.    For such additional relief as the Court deems just and equitable.

DATED: August **8**, 2012.

**YARMUTH WILSDON PLLC**

_____
Scott T. Wilsdon (*pro hac vice* pending)
Jeremy E. Roller (*pro hac vice* pending)

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

_____
Michael E. Williams (Bar No. 181299)
Rachel Juarez (Bar No. 273133)

Attorneys for Plaintiff DIRECTV, LLC

# <u>EXHIBIT A</u>

# The United States of America

## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

The Mark shown in this certificate has been registered in the United States
Patent and Trademark Office to the named registrant.

The records of the United States Patent and Trademark Office show that
an application for registration of the Mark shown in this Certificate was filed in the
Office; that the application was examined and determined to be in compliance with
the requirements of the law and with the regulations prescribed by the Director of the
United States Patent and Trademark Office; and that the Applicant is entitled to
registration of the Mark under the Trademark Act of 1946, as Amended.

A copy of the Mark and pertinent data from the application are part of
this certificate.

This registration shall remain in force for TEN (10) years, unless
terminated earlier as provided by law, and subject to compliance with the provisions
of Section 8 of the Trademark Act of 1946, as Amended.



_of and Trademark Office_

Complaint, Exhibit A
Page 25

Requirements for Maintaining a
Federal Trademark Registration

### SECTION 8: AFFIDAVIT OF CONTINUED USE

The registration shall remain in force for 10 years, except that the
registration shall be canceled for failure to file an Affidavit of Continued
Use under Section 8 of the Trademark Act, 15 U.S.C. §1058, upon the
expiration of the following time periods:
  i) At the end of 6 years following the date of registration.
  ii) At the end of each successive 10-year period following the date of
    registration.

*Failure to file a proper Section 8 Affidavit at the appropriate time will result in the
cancellation of the registration.*

### SECTION 9: APPLICATION FOR RENEWAL

The registration shall remain in force for 10 years, subject to the provisions
of Section 8, except that the registration shall expire for failure to file an
Application for Renewal under Section 9 of the Trademark Act, 15 U.S.C.
§1059, at the end of each successive 10-year period following the date of
registration.

*Failure to file a proper Application for Renewal at the appropriate time will result in
the expiration of the registration.*

No further notice or reminder of these requirements will be sent to the
Registrant by the Patent and Trademark Office. It is recommended
that the Registrant contact the Patent and Trademark Office
approximately one year before the expiration of the time periods shown
above to determine the requirements and fees for the filings required to
maintain the registration.

Int. Cls.: 9, 25, 38, and 41

Prior U.S. Cls.: 21, 22, 23, 26, 36, 38, 39, 100, 101, 104, and 107

## United States Patent and Trademark Office

Reg. No. 2,698,197
Registered Mar. 18, 2003

### TRADEMARK
### SERVICE MARK
### PRINCIPAL REGISTER

# DIRECTV

DIRECTV, INC. (CALIFORNIA CORPORATION)
2230 E. IMPERIAL HIGHWAY
EL SEGUNDO, CA 90245

FOR: TELECOMMUNICATIONS PRODUCTS, NAMELY, RECEIVERS, RECEIVER MODULE, MODULATORS, TRANSMITTERS, MULTIPLEX-ERS, DECODER BOXES, DATA PROCESSORS, IN-TEGRATED CIRCUITS, SET-TOP BOXES PRIMARILY COMPRISED OF A RECEIVER AND CIRCUITRY, COMPUTER CONTROLLING HARD-WARE AND SOFTWARE FOR USE IN THE AFORE-MENTIONED GOODS, SATELLITE DISHES, REMOTE CONTROLLERS, VIDEO DISPLAY DEVI-CES, NAMELY, TELEVISION SETS, VIDEO PROJEC-TORS, AND VIDEO MONITORS, ANTENNAS, INSTALLATION KITS PRIMARILY COMPRISING CABLES, PHONE CORDS, CABLE TIES, CABLE CLIPS, GROUND WIRE, PHONE ADAPTERS, AND PARTS FOR THE AFORESAID GOODS, VIDEO DISTRIBUTION EQUIPMENT, NAMELY, AMPLIFI-ERS, PRE-AMPLIFIERS, BLOCK SIGNAL CONVER-TERS, ROUTERS, ELECTRICAL SWITCHES, ENCODERS, DECODERS, AND ACCESSORIES, NAMELY, TELEPHONE JACKS, CHIMNEY MOUNTS, SURGE PROTECTORS, CABLES, CON-NECTORS AND FITTINGS ALL FOR USE IN THE DIRECT-TO-HOME SATELLITE BROADCASTING INDUSTRY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-17-1994; IN COMMERCE 6-17-1994.

FOR: CLOTHING, NAMELY, SHIRTS, GOLF SHIRTS, JACKETS, WIND-RESISTANT JACKETS, SWEATSHIRTS, T-SHIRTS, CAPS, HATS, SWEA-TERS, SWEAT PANTS, SLEEPWEAR, SHORTS, RAINWEAR, WRIST BANDS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-17-1994; IN COMMERCE 6-17-1994.

FOR: SATELLITE TELEVISION BROADCASTING SERVICES, BROADCASTING PROGRAMS VIA A GLOBAL COMPUTER NETWORK, PROVIDING AND PROCESSING INTERACTIVE ACCESS TO INFORMATION VIA AN ELECTRONIC COMMU-NICATION NETWORK, ELECTRONIC MAIL SER-VICES, ELECTRONIC TRANSMISSION OF MESSAGES AND DATA, PAY-PER-VIEW TRANS-MISSION SERVICES, DELIVERY OF MESSAGES BY ELECTRONIC TRANSMISSION, VIDEO BROAD-CASTING AND MESSAGING SERVICES, VIDEO-ON-DEMAND TRANSMISSION SERVICES, PRO-VIDING MULTIPLE-USER ACCESS TO A GLOBAL COMPUTER INFORMATION NETWORK, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 6-17-1994; IN COMMERCE 6-17-1994.

FOR: TELEVISION PROGRAMMING AND PRO-DUCTION SERVICES, PROGRAMMING ON A GLO-BAL COMPUTER NETWORK, DISTRIBUTION OF TELEVISION PROGRAMS FOR OTHERS, PROVID-ING ON-LINE INTERACTIVE COMPUTER DATA-BASES OF INFORMATION IN THE FIELDS OF ENTERTAINMENT NEWS, FINANCIAL NEWS, CURRENT EVENTS, SPORTS, AND PROVIDING ON-LINE INTERACTIVE COMPUTER DATABASES OF INFORMATION ON SATELLITE TELEVISION PROGRAMMING LISTS AND SCHEDULES OF OTHERS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-17-1994; IN COMMERCE 6-17-1994.

OWNER OF U.S. REG. NOS. 1,872,038 AND 2,184,561.

SN 75-982,248, FILED 12-4-1998.

MICHAEL BAIRD, EXAMINING ATTORNEY



## CERTIFICATE OF REGISTRATION
### PRINCIPAL REGISTER

*The Mark shown in this certificate has been registered in the United States Patent and Trademark Office to the named registrant.*

*The records of the United States Patent and Trademark Office show that an application for registration of the Mark shown in this Certificate was filed in the Office; that the application was examined and determined to be in compliance with the requirements of the law and with the regulations prescribed by the Director of the United States Patent and Trademark Office; and that the Applicant is entitled to registration of the Mark under the Trademark Act of 1946, as Amended.*

*A copy of the Mark and pertinent data from the application are part of this certificate.*

*To avoid CANCELLATION of the registration, the owner of the registration must submit a declaration of continued use or excusable non-use between the fifth and sixth years after the registration date. (See next page for more information.) Assuming such a declaration is properly filed, the registration will remain in force for ten (10) years, unless terminated by an order of the Commissioner for Trademarks or a federal court. (See next page for information on maintenance requirements for successive ten-year periods.)*



*Director of the Unit*

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### Requirements in the First Ten Years*
*What and When to File:*

- First Filing: A Declaration of Continued Use (or Excusable Non-use), filed between the 5th and 6th years after the registration date. (*See* 15 U.S.C. §1058; 37 C.F.R. §2.161.)
- Second Filing: A Declaration of Continued Use (or Excusable Non-use) and an Application for Renewal, filed between the 9th and 10th years after the registration date. (*See* 15 U.S.C. §1058 and §1059; 37 C.F.R. 2.161 and 2.183.)

### Requirements in Successive Ten-Year Periods*
*What and When to File:*

- A Declaration of Continued Use (or Excusable Non-use) and an Application for Renewal, filed between each 9th and 10th-year period after the date when the first ten-year period ends. (*See* 15 U.S.C. §1058 and §1059; 37 C.F.R. §2.161 and 2.183.)

### Grace Period Filings*

There is a six-month grace period for filing the documents listed above, with payment of an additional fee.

The U.S. Patent and Trademark Office (USPTO) will **NOT** send you any future notice or reminder of these filing requirements. Therefore, you should contact the USPTO approximately one year prior to the deadlines set forth above to determine the requirements and fees for submission of the required filings.

NOTE: *Electronic forms for the above documents, as well as information regarding current filing requirements and fees, are available online at the USPTO web site:*

*www.uspto.gov*

## YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS IDENTIFIED ABOVE DURING THE SPECIFIED TIME PERIODS.

*Exception for the Extensions of Protection under the Madrid Protocol:
The holder of an international registration with an extension of protection to the United States must file, under slightly different time periods, a Declaration of Continued Use (or Excusable Non-use) at the USPTO. See 15 U.S.C. §1141k; 37 C.F.R. §7.36. The renewal of an international registration, however, must be filed at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol. See 15 U.S.C. §1141j; 37 C.F.R. §7.41.

# EXHIBIT B

Int. Cl.: 38

Prior U.S. Cls.: 100, 101 and 104

United States Patent and Trademark Office

Reg. No. 3,085,552
Registered Apr. 25, 2006

SERVICE MARK
PRINCIPAL REGISTER

# DIRECTV

DIRECTV, INC. (CALIFORNIA CORPORATION)
2230 E. IMPERIAL HWY.
EL SEGUNDO, CA 902450956

FOR: SATELLITE TELEVISION BROADCASTING
SERVICES PROVIDED DIRECTLY TO THE CON-
SUMER, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 10-31-1990; IN COMMERCE 6-17-1994.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 2,503,432, 2,698,197
AND OTHERS.

SER. NO. 78-664,780, FILED 7-6-2005.

TASNEEM HUSSAIN, EXAMINING ATTORNEY

# EXHIBIT C

Int. Cls.: 16, 25, 38 and 41

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, 39, 50, 100,
101, 104 and 107

## United States Patent and Trademark Office

Reg. No. 1,989,158

Registered July 23, 1996

TRADEMARK
SERVICE MARK
PRINCIPAL REGISTER



HUGHES COMMUNICATIONS, INC. (CALIFOR-
NIA CORPORATION)
1990 GRAND AVENUE
EL SEGUNDO, CA 90245

FOR: CARDBOARD DISPLAYS, WRITING
PAPER, PENS, PRINTED PROGRAMMING
GUIDES, MAGAZINES AND INSTRUCTION
MANUALS RELATING TO SATELLITE
BROADCASTING SERVICES AND EQUIP-
MENT, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37,
38 AND 50).

FIRST USE 6-17-1994; IN COMMERCE
6-17-1994.

FOR: CLOTHING, NAMELY T-SHIRTS,
HATS, JACKETS, SWEATSHIRTS, SWEATERS,
PANTS AND HEADWEAR, IN CLASS 25 (U.S.
CLS. 22 AND 39).

FIRST USE 1-20-1994; IN COMMERCE
1-20-1994.

FOR: SATELLITE TELEVISION BROAD-
CASTING SERVICES, IN CLASS 38: (U.S. CLS.
100, 101 AND 104).

FIRST USE 6-17-1994; IN COMMERCE
6-17-1994.

FOR: PAY-PER VIEW TELEVISION PRO-
GRAMMING AND PRODUCTION SERVICES,
IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-17-1994; IN COMMERCE
6-17-1994.

THE MARK CONSISTS OF A RECTANGLE
WITH A STYLIZED CYCLONE REVERSED
OUT OF IT.

SN 75-975,011, FILED 12-10-1991.

GLENN CLARK, EXAMINING ATTORNEY

# EXHIBIT D

Int. Cls.: 9, 16 and 25

Prior U.S. Cls.: 2, 5, 21, 22, 23, 26, 29, 36, 37, 38, 39 and 50

Reg. No. 2,372,271

**United States Patent and Trademark Office**   Registered Aug. 1, 2000

### TRADEMARK
#### PRINCIPAL REGISTER



DIRECTV, INC. (CALIFORNIA CORPORATION)
2230 E. IMPERIAL HIGHWAY
EL SEGUNDO, CA 90245

SER. NO. 75-625,374, FILED 1-21-1999.

SHARON MEIER, EXAMINING ATTORNEY

# EXHIBIT E



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

FEBRUARY 11, 2000

PTAS

HUGHES ELECTRONICS CORPORATION
TINA M. POMPEY
C/O CORPORATE PATENTS AND LICENSING
P.O. BOX 956, ES, BLDG. 001, M/S A109
EL SEGUNDO, CA 90245-0956

*101200049A*

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT DIVISION OF
THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE MICROFILM COPY IS
AVAILABLE AT THE ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER
REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE
INFORMATION CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA
PRESENT IN THE PATENT AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD
FIND ANY ERRORS OR HAVE QUESTIONS CONCERNING THIS NOTICE, YOU MAY
CONTACT THE EMPLOYEE WHOSE NAME APPEARS ON THIS NOTICE AT 703-308-9723.
PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT AND TRADEMARK OFFICE,
ASSIGNMENT DIVISION, BOX ASSIGNMENTS, CG-4, 1213 JEFFERSON DAVIS HWY,
SUITE 320, WASHINGTON, D.C. 20231.

RECORDATION DATE: 11/08/1999

REEL/FRAME: 001988/0130
NUMBER OF PAGES: 7

BRIEF: ASSIGNS THE ENTIRE INTEREST AND THE GOODWILL

ASSIGNOR:
    HUGHES COMMUNICATIONS, INC.

DOC DATE: 11/04/1999
CITIZENSHIP: CALIFORNIA
ENTITY: CORPORATION

ASSIGNEE:
    DIRECTV, INC.
    2230 E. IMPERIAL HIGHWAY
    EL SEGUNDO, CALIFORNIA 90245

CITIZENSHIP: CALIFORNIA
ENTITY: CORPORATION

APPLICATION NUMBER: 75975011
REGISTRATION NUMBER: 1989358

FILING DATE: 12/10/1993
ISSUE DATE: 07/23/1996

MARK:
DRAWING TYPE: MISCELLANEOUS DESIGN

RECEIVED

FEB 2 2 2000

PATENTS & LICENSING
CORPORATE OFFICE

001988/0130 PAGE 2

APPLICATION NUMBER: 75976090          FILING DATE: 11/24/1993
REGISTRATION NUMBER: 1994233          ISSUE DATE: 08/13/1996

MARK: DIRECT TICKET
DRAWING TYPE: WORDS, LETTERS, OR NUMBERS IN TYPED FORM


MARY BENTON, EXAMINER
ASSIGNMENT DIVISION
OFFICE OF PUBLIC RECORDS





UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

*101200049B*

AUTHORIZATION TO CHARGE ADDITIONAL FEES TO DEPOSIT ACCOUNT

FEBRUARY 11, 2000

TO:                OFFICE OF FINANCE

FROM:              ASSIGNMENT DIVISION
                   OFFICE OF PUBLIC RECORDS

SUBJECT:           DEPOSIT ACCOUNT CHARGE(S)

CHARGE THE DEPOSIT ACCOUNT LISTED BELOW ADDITIONAL FEE(S) AS INDICATED
BELOW. AUTHORIZATION TO CHARGE ADDITIONAL FEES HAS BEEN PROVIDED PER
THE ATTACHED COVER SHEET, OR BY DIRECT CONTACT WITH THE CUSTOMER.

DEPOSIT ACCOUNT NUMBER: 500383
PROPERTY NUMBER: 1989358

RECORDING FEES:

FEE CODE: 481    AMOUNT: 40
          482    AMOUNT: 25

IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, YOU MAY CONTACT
THE INDIVIDUAL WHOSE NAME APPEARS ON THIS NOTICE AT 703-308-9723.

MARY BENTON, EXAMINER
ASSIGNMENT DIVISION
OFFICE OF PUBLIC RECORDS

TRADEMARK SERVICE FEES:                 FEE CODE:

RECORDING FIRST MARK                    481
RECORDATION SECOND AND                  482
  SUBSEQUENT MARK IN SAME DOCUMENT
LABOR CHARGES FOR SERVICES PER HOURS    484
  OR FRACTION THEREOF
UNSPECIFIED OTHER SERVICES              485


PATENT SERVICE FEES:

RECORDING EACH PATENT ASSIGNMENT,       581

AGREEMENT, OTHER PAPER, PER PROPERTY
LABOR CHARGES FOR SERVICES PER HOUR       584
  ($30) OR FRACTION THEREOF
UNSPECIFIED OTHER SERVICES                585

## HUGHES ELECTRONICS CORPORATION
200 N. Sepulveda Blvd.
P.O. Box 956, ES, 001, M/S A109
El Segundo, CA 90056
(310) 662-9931

11-15-1999

101200049

| 1. NAME OF CONVEYING PARTY(IES): | 2. NAME AND ADDRESS OF RECEIVING PARTY(IES): |
|---|---|
| HUGHES COMMUNICATIONS, INC. a California Corporation 1500 Hughes Way Long Beach, CA 90810-9928 | DIRECTV, Inc, a California Corporation 2230 E. Imperial Highway El Segundo, California 90245 |
| 3. NATURE OF CONVEYANCE: <br><br> X  Assignment <br> __ Merger <br> __ Security Agreement <br> __ Change of Name <br> __ Other _____ <br> 3a. EXECUTION DATE: November 4, 1999 <br> 3b. EFFECTIVE DATE: November 1, 1994 | 2a. ASSIGNEE A FOREIGN ENTITY? <br><br> Yes: ____ No:  X <br><br> 2b. DOMESTIC REPRESENTATIVE DESIGNATED: <br><br> Yes: ____ No:  X |
| 4a. TRADEMARK APPLICATION NOS.: <br><br><br> Additional numbers attached ___ Yes  X  No | 4b. TRADEMARK REGISTRATION NO(S).: <br> Reg. No. 1,989,358 -- Cyclone Design <br> Reg. No. 1,994,233 -- DIRECT TICKET <br> Additional numbers attached? ___ Yes  X  No |
| 5. NAME AND ADDRESS OF CORRESPONDENT: <br><br> Tina M. Pompey <br> C/O Corporate Patents and Licensing <br> Hughes Electronics Corporation <br> P.O. Box 956, ES, Bldg. 001, M/S A109 <br> El Segundo, CA 90245-0956 | |
| 6. TOTAL NUMBER OF ITEMS: 2 <br><br> 7. TOTAL FEE: $ 50.00 <br><br> 8. CHECK ENCLOSED:  X  No <br> (CHARGE FEES TO DEPOSIT ACCOUNT NO. 50-0383) | 9. The undersigned declares to the best of her knowledge and belief that the information on this cover sheet is true and correct and any copy submitted is a true copy of the original document. <br><br> _Tina M Pompey_   1 of 7 <br> Tina M. Pompey <br> Dated: November 4, 1999 |

I hereby certify that a copy of this document is being deposited with the United States Postal Service by First Class Mail, addressed to: BOX: ASSIGNMENT/FEE, The Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, Virginia 22202-3513, this ___ day of November 1999

## CONFIRMATORY ASSIGNMENT OF TRADEMARKS

WHEREAS, HUGHES COMMUNICATIONS, INC. a California corporation, having a principal place of business at 1500 Hughes Way, Long Beach, CA 90810-9928 (hereinafter "Assignor") is the record owner of the trademarks, service marks and registrations shown on the attached Schedule A;

WHEREAS, on November 1, 1994, Assignor transferred its entire business and the goodwill symbolized therewith to DIRECTV, INC., a California corporation, having a principal place of business at 2230 E. Imperial Highway, El Segundo, CA 90245, (hereinafter "Assignee"), pursuant to the Reorganization Agreement at the attached Schedule B, including all rights in the trademarks, service marks and registrations shown on the attached Schedule A;

WHEREAS, the parties desire to place record title in and to the trademarks, service marks and registrations as set forth in the attached Schedule A (the "Marks") in the name of Assignee;

NOW, THEREFORE, good and valuable consideration being extant, the receipt and sufficiency of which Assignor acknowledges, Assignor has assigned and hereby assigns effective as of November 1, 1994 to Assignee all of its rights, title and interest in and to the Marks shown on Schedule A, and the goodwill of the business symbolized thereby.

IN WITNESS WHEREOF, Assignor has executed this Assignment effective as of November 1, 1994.

HUGHES COMMUNICATIONS, INC.

4 November 1999
Date

By: _Jennifer Smith_
Name: JENNIFER SHELLER
Title: Secretary

Agreed and confirmed to this _14th_ day of _November_ 1999.

DIRECTV, INC.

By: _____
Name: J. L. Williamson
Title: ASSISTANT SECRETARY

## SCHEDULE A

| Trademark | Registration No. | Class |
|---|---|---|
| Cyclone Design | 1,989,358 | 16, 25, 38, 41 |
| DIRECT TICKET | 1,994,233 | 16, 38, 41 |

SCHEDULE B

## REORGANIZATION AGREEMENT

THIS REORGANIZATION AGREEMENT ("Agreement") is entered into as of November 1, 1994 ("Effective Date") by and among Hughes Aircraft Company, a Delaware corporation ("HAC"), Hughes Communications, Inc., a California corporation and a wholly-owned subsidiary of HAC ("HCI"), Hughes Communications Galaxy, Inc., a California corporation and a wholly-owned subsidiary of HCI ("HCG"), Hughes Communications Satellite Services, Inc., a California corporation and a wholly-owned subsidiary of HCI ("HCSSI"), DIRECTV, Inc., a California corporation formerly named "Hughes Communications Direct Broadcast Service Inc." and a wholly-owned subsidiary of HCI ("DIRECTV"), DIRECTV Enterprises, Inc., a Delaware corporation which has not issued any shares of capital stock prior to the Effective Date ("Enterprises") and DIRECTV Operations, Inc., a California corporation which has not issued any shares of capital stock prior to the Effective Date ("Operations") (HAC, HCI, HCG, HCSSI, DIRECTV, Enterprises and Operations are each sometimes referred to as a "party" and two or more of them are sometimes referred to as "parties").

### Recitals

A.    Since 1983, HCI, directly or through its subsidiaries, has actively conducted various business activities in the satellite operations and services business, including providing satellite transponder and transmission capacity for cable television and broadcast television customers and for broadcast video and interactive data, voice and communications networks. As part of an expansion of this business, utilizing its know how in satellite transmission and related activities, HCI, with the approval and support of HAC and its parent company, GM Hughes Electronics Corporation, a Delaware corporation ("Hughes"), formed DIRECTV to provide direct broadcast satellite ("DBS") services and related activities, including acquiring, marketing, promoting, selling and/or distributing DBS programming or other services distributed via satellite and such other services and products as are ancillary thereto (the "DBS Services").

B.    Prior to January 1, 1994, HCI and its subsidiaries, including DIRECTV, acquired or developed various assets and properties, entered into various contracts and incurred various liabilities in connection with providing the DBS Services. Effective on January 1, 1994 ("Assumption Date"), DIRECTV assumed certain of the contracts, obligations and liabilities previously incurred by HCI and its subsidiaries with respect to the DBS Services, as evidenced by the Assignment and Assumption Agreement attached as Exhibit B (the "Assumption Agreement"), and since that date DIRECTV has itself acquired certain additional assets, entered into various contracts and incurred additional liabilities, and has initiated commercial DBS Services in the 48 contiguous states of the United States using the combined assets and operations of HCI and its subsidiaries associated with the DBS Services,

including those existing at January 1, 1994 and those subsequently acquired or
developed.

C.    HCI and its subsidiaries, other than DIRECTV, have pursued various
initiatives related to providing DBS Services in countries other than the United
States and Canada (the "International DBS Services").

D.    As of October 31, 1994, the assets and properties associated with the DBS
Services provided by DIRECTV (excluding assets and properties which relate solely
to the International DBS Services) are owned as specified in Exhibit D.1. As
indicated in such Exhibit: (i) HCG presently owns the two orbiting Ku-Band DBS
satellites (the "Existing DBS Satellites") and HCG has been granted all
administrative and governmental authority of the U.S. necessary to construct, launch
and operate the Existing DBS Satellites for a total of 27 DBS channels at the 101°
W.L. orbital location (the "FCC Licenses"); (ii) HCSSI owns the broadcast facility
assets, consisting of land, building, fixtures, improvements and equipment located in
Castle Rock, Colorado (such assets, other than the land and the telemetry, tracking
and control equipment specified in Exhibit D.2 (the "TT&C Equipment"); are referred
to as the "Castle Rock Broadcast Facility", and the portion of the parcel of land
owned by HCSSI which is reasonably required in connection with the DBS Services
provided by DIRECTV and which is more fully described in Exhibit D.3 is referred to
as the "Castle Rock Property"); (iii) HCI or a subsidiary owns the monitor center
equipment located at DIRECTV's corporate headquarters in El Segundo, California
(the "Monitor Equipment"); (iv) HCI or a subsidiary owns office equipment, furniture,
fixtures and other assets located at DIRECTV's corporate headquarters in El
Segundo, California (the "Office Equipment," which term excludes the Monitor
Equipment); (v) HCG is the payee of the Secured Promissory Note dated March 2,
1994 (the "USSB Note") issued jointly and severally by United States Satellite
Broadcasting Company, Inc., a Minnesota corporation ("USSB") and its subsidiary,
USSB II, a Minnesota corporation ("USSB II") pursuant to the Satellite Payload
Purchase Agreement dated May 31, 1991, as amended (the "SPPA") between
USSB and HCG, and the USSB Note is secured under that certain Security
Agreement dated as of March 2, 1994, (the "Security Agreement") between USSB II
and HCG and that certain Pledge Agreement dated as of March 2, 1994 (the
"Pledge Agreement") between USSB and HCG (the Security Agreement and the
Pledge Agreement, and any collateral security provided for in either such
agreement, are collectively referred to as the "USSB Collateral"); (vi) HCI is the
registered owner of various domestic and foreign applications for and registrations
of trademarks or service marks associated with the DBS Services as listed in Exhibit
D.4 ("Existing Marks"), and HCI or its subsidiaries also own or have the right to use
certain other Intellectual Property (as defined below) associated with the DBS
Services.

E.    As of October 31, 1994, HCI or its subsidiaries have entered into various
contracts, leases or other agreements associated with the DBS Services, including

-2-

2.   Reorganization.

2.1   General.   The parties intend in this Agreement and the Related
Documents to consummate a reorganization (the "Reorganization") of the DIRECTV
Group so that, among other things, as of the Effective Date: (a) all Assets shall be
transferred by the applicable member of the HCI Group to the applicable member of
the DIRECTV Group, (b) Enterprises shall become the parent corporation of the
DIRECTV Group, with DIRECTV and Operations as its wholly-owned subsidiaries;
and (c) HAC shall become the parent corporation of Enterprises. In addition,
following such Reorganization, (x) the Existing DBS Satellites shall be transferred by
HCG to HAC, in exchange for cancellation of the related outstanding intercompany
debt incurred to purchase and launch such satellites, (y) any other intercompany
debt of the HCI Group to HAC arising from the operations of the DIRECTV Group (in
the aggregate amount of approximately $105 million) will be contributed to the
capital of HCI and (z) HAC will transfer the Existing DBS Satellites to Enterprises.

2.2   Transactions and Related Documents.   As of the Effective Date, the
following transactions shall occur and the following agreements and other
documents shall be executed by the applicable parties and shall become effective
(the actions in paragraphs (a), (b), (c) and (d) shall occur in the order shown as part
of the Reorganization; and the actions in the remaining paragraphs of this Section
2.2 shall occur as of the Effective Date, after the completion of the Reorganization):

(a)   Each of HCG, HCSSI and DIRECTV shall transfer to HCI the
respective Assets specified or described in Exhibit 2.2(a), by means of
a dividend distribution and without further consideration.

(b)   HCI shall: (i) transfer to Operations the Assets specified or described
in Exhibit 2.2(b)(i) in exchange solely for the initial issuance by
Operations to HCI of 1,000 shares of common stock of Operations and
without further consideration; and (ii) transfer to DIRECTV the Existing
Marks and all goodwill appurtenant thereto and the other Assets
specified or described in Exhibit 2.2(b)(ii), as a capital contribution and
without further consideration.

(c)   HCI shall transfer to Enterprises the Assets specified or described in
Exhibit 2.2(c) and all the issued and outstanding shares of capital
stock of Operations and DIRECTV, in exchange solely for the initial
issuance by Enterprises to HCI of 1,000 shares of common stock of
Enterprises and without further consideration.

(d)   HCI shall transfer to HAC all the issued and outstanding shares of
capital stock of Enterprises by means of a dividend distribution and
without further consideration.

-9-

EXHIBIT 2.2(b)(II)

## Assets Transferred by HCI to DIRECTV*

All Existing Marks and all goodwill appurtenant thereto
Certain other miscellaneous Assets
Certain Office Equipment
    not located at the corporate headquarters in El Segundo, CA or at the
    Castle Rock Broadcast Facility

---

\* More detailed description available at Hughes.

11-08-1999

U.S. Patent & Trademark Mail Rcpt Dt. #01

TINA M. POMPEY, Trademark Counsel



Building D81. H/5 A109
Telephone: (310) 353-9931
Telefax: (310) 322-0729

November 4, 1999

The Assistant Commissioner for Trademarks
United States Patent and Trademark Office
2900 Crystal Drive
Arlington, VA  22202-3513

     RE:   Assignment of Trademarks by Hughes Communications, Inc. to
          Hughes Electronics Corporation

Dear Sir/Madam:

Enclosed are the following documents for filing in connection with the above-captioned assignment:

    1.   Assignment of Trademarks With Authorization and Appointment by
        Assignor

The fees required in connection with the assignment, a total of $50.00 in this matter, should be charged to this firm's deposit account No. 50-0383.

                     Sincerely,

                     HUGHES ELECTRONICS

                     Tina M. Pompey
                     Trademark Counsel

TMP/jb

Enclosures

Corporate Offices
200 N. Sepulveda Blvd.
P.O. Box 956
El Segundo, CA 90245-0956

11-08/1999
U. Patent & Trademark Mail Rcpt Dt, #20

TINA M. POMPEY, Trademark Counsel

*HUGHES*

Building 001 M/S A109
Telephone: (310) 662-9931
Telefax: (310) 323-0729

November 4, 1999

The Assistant Commissioner for Trademarks
United States Patent and Trademark Office
2900 Crystal Drive
Arlington, VA 22202-3513

RE:    Assignment of Trademarks by Hughes Communications, Inc. to
Hughes Electronics Corporation

Dear Sir/Madam:

Enclosed are the following documents for filing in connection with the above-
captioned assignment:

1.    Assignment of Trademarks With Authorization and Appointment by
Assignor

The fees required in connection with the assignment, a total of $50.00 in this
matter, should be charged to this firm's deposit account No. 50-0383.

Sincerely,

HUGHES ELECTRONICS

Tina M. Pompey
Trademark Counsel

TMP/jb

Enclosures

Corporate Offices
200 N. Sepulveda Blvd.
P.O. Box 956
El Segundo, CA 90245-0956